GEORGE H. WEIGHTMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weightman v. Commissioner
Docket No. 696-81.
United States Tax Court
T.C. Memo 1982-674; 1982 Tax Ct. Memo LEXIS 73; 45 T.C.M. (CCH) 167; T.C.M. (RIA) 82674; November 22, 1982. Robert J. Alter, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioner's 1977 Federal income tax in the amount of $241.49. After concessions by each party, the sole issue remaining for decision herein is whether petitioner *74 is entitled to a home office deduction under section 280A. [1]
When this case was called for trial, it was submitted to the Court on a fully stipulated basis under Rule 122, and said stipulation and attached exhibits form the basis of our findings of fact herein. Such stipulation included, inter alia, a provision that the Court could consider the testimony which was given in petitioner's earlier case involving the year 1976 (Docket No. 7129-79) as though said testimony had been given in the instant case. At the time of filing his petition herein, petitioner was a resident of New York City, New York. Petitioner, a single individual, timely filed a Federal income tax return for the year 1977. During all of 1977, as well during the year 1976, petitioner was employed on a full time basis as a tenured Associate Professor of Sociology at the Herbert H. Lehman College of the City University of New York (hereinafter "the college") located in the Bronx *75 section of New York City. In 1977, petitioner taught three undergraduate courses in sociology at the college, each of which met three hours a week.Petitioner accordingly held classes at the college three days a week. In addition to teaching his courses, petitioner was required to maintain office hours on campus at least three hours a week for the purpose of conferring with undergraduate students. As part of his employment, petitioner also conducted research and served on various teaching-related committees, all of which regularly and periodically met on the college compus while regular classes were in session. Petitioner also served as a Faculty Senator in the college government during 1977, and engaged in professional development activities, including, inter alia, independent research, field trips, revision of course materials, and the like. During the months of June to September 1977 petitioner did field research in the field of sociology in the Philippines, Indonesia and Malaysia. He also attended and participated in conferences in the field of sociology at Colorado Springs, Colorado, and Chicago, Illinois, in 1977. During 1977, and while in New York, petitioner from *76 time to time used the facilities of the New York Public Library for research purposes.Petitioner considered his role as a researcher as at least as important to the college and to his position as associate professor as the actual teaching itself. Petitioner and some of his colleagues felt that in the college's consideration of candidates for tenure and promotion, research was the most important criterion, and they believed that candidates must achieve recognition in their academic fields by professional development, including research, writing, publishing and attending scholarly conferences. These activities, included in the phrase "professional development" were carried on by petitioner and took considerable time, energy and resources, including space in which to work. During 1977, the college provided petitioner with an on-campus office in which to work and meet with students. He shared this office, which was approximately 11 X 20 feet in size, with two other members of the faculty. The building in which his office was located was open on Monday through Thursday from 8:00 a.m. to 9:00 p.m. and on Friday from 8:00 a.m. to 4:00 p.m. Those were also the hours during which classes *77 were offered at the college and the hours during which the college library was open. The building in which petitioner's office was located was closed on weekends, as was the college library. Petitioner's office was furnished with desks, chairs, filing cabinets, and bookshelves. There was a telephone system which served four offices, but there were no separate telephones at each desk or in each office. The telephone system was for incoming calls only and since 12 or more people received calls on this system, the telephone rang frequently throughout the day. Petitioner maintained office hours in this office at least three hours a week; and if he met with any graduate or undergraduate students outside of the classroom, he met with them in that office. Lehman College is located in the Bronx in New York City. At all times relevant to this case, security was a problem at the college. Numerous burglaries and assaults had been committed in and around the college and even in the building in which petitioner's office was located. Petitioner and some of his colleagues felt that it was not safe to leave any of their personal belongings in their offices nor to stay at the college any *78 longer than necessary.Petitioner did not store any of the books he used for his research or for his lectures in his office on campus. Petitioner would leave a book in his on-campus office only when he was sure he had a duplicate copy of the book, such as a textbook. Furthermore, he would not leave exams and term papers in the office for the same security reasons. Petitioner and some of his colleagues also would not leave personal items such as briefcases unattended for more than a few minutes for fear of theft. Petitioner and some of his colleagues also feared for their personal safety. Petitioner rode the subway to work, and felt that was also dangerous. Petitioner also feared for his safety in and around the college.During 1975, the college building where petitioner's office was located had been taken over by student demonstrators. In 1976, there was some fear of a similar occurrence, and in 1977 there was another such incident. Although the faculty offices were available throughout the week, petitioner came to the college only when necessary and left as early as possible. He generally left around 2:00 p.m. - 3:00 p.m., spending only four to five hours on campus. His classes *79 generally met three days a week. Petitioner normally tried to schedule any other meetings on one of those three days, with the result that petitioner usually came to the college only on those three days. During 1977 petitioner, a bachelor, lived alone in an apartment located on the East Side in Manhattan. The apartment consisted of a living room, bedroom, small kitchen, and a bathroom. Petitioner was not required by Lehman College, either by contract or as a condition of employment, to maintain an office in his home, but he used a portion of his bedroom as a home office. He prepared his classroom lectures, graded papers and exams, did some research, and did almost all of his professional writing in his home office. Since exam grades had to be turned in within 48 hours, any exams given on Fridays had to be graded at home. A specific area or portion of petitioner's bedroom was used exclusively as his home office. This specific area was furnished with a desk, a chair, two file cabinets, and three bookcases. In the other portion or area of the bedroom petitioner had his bed and a dresser. Although the two areas were located within a single room, they were separate and discrete *80 areas.However, the two areas of the room were not separated by any wall, partition, curtain, or other physical demarcation. Certain books that petitioner occasionally used in his work as a college professor and the telephone that he also occasionally used in connection with his job were located in his living room. Petitioner derived no income from publishing in 1977. On his tax return for 1977, petitioner claimed a deduction in the amount of $1,071.20, as constituting expenses incurred by him on account of a maintenance of an office in the bedroom of his apartment in New York City. This amount represents 25% of petitioner's yearly rental for his apartment, plus $24 for utilities expense. The record does not disclose the size of the area used by petitioner for his home office, as compared to the overall size of his apartment. Upon audit, respondent disallowed petitioner's claimed deduction, on the grounds that petitioner had not fulfilled the requirements of section 280A. As can be seen by making a comparison, the operative and dispositive facts in this case are in all important respects the same as the facts which we considered in the earlier case brought by this petitioner *81 involving his taxable year 1976. . The factual differences between the two years are inconsequential, e.g., in 1976 petitioner went to Canada on a field trip, whereas in 1977 he went to the Far East; in 1976 petitioner taught a couple of graduate courses as well as undergraduate courses, whereas in 1977 he taught undergraduate courses only. There being no difference in any important fact between the instant case and the earlier Weightman case, nor any intervening change in the law, we see no reason to decide it any differently.
As we said in that earlier case (hereinafter Weightman I), we feel that petitioner has satisfied the exclusive and regular use test of section 280A(c)(1) with respect to him home office. We note, however, that this record contains nothing by which we can determine that petitioner's allocation of a 25 percent of his apartment rent to the "home office" is a correct allocation of such expense, based on the relative size of the business portion of the apartment versus the personal use portion, or any other acceptable method of allocation under section 280A(c)(1). Cf. . *82 Nor does this record disclose the amount of gross income derived by petitioner from the use of his home office in 1977 by which the limitations on deductible amounts provided by section 280A(c)(5) could be calculated. See , affd. without opinion . As in the case of Weightman I, however, we must hold that petitioner here has failed to show that his home office was his principal place of business within the meaning of section 280A(c)(1)(A). On this point, we follow the reasoning and authorities given by the Court in Weightman I.
Finally, as we did in petitioner's prior case, we must hold that petitioner has failed to prove that his use of an office in his home was "for the convenience of his employer," as mandated by section 280A(c)(1). Petitioner's employer, the college, provided him with office space on campus, and petitioner's terms of employment with the college did not require him to maintain any off-campus office, as the parties have stipulated. Petitioner has made a strong showing in this case that his working conditions at the college were bad -- his office was *83 small, crowded and noisy, and the level of security, both as to property and personal safety, was deplorable. We can fully appreciate why petitioner would want to do as much of his work as possible at home rather than at the college, but it appears to us that all he has proved is that his home office was maintained for his own convenience, not that of his employer. Even acknowledging that petitioner has made it clear that the use of a home office in his situation was both appropriate and helpful in connection with his employment, Congress specifically intended to negate any such standard of allowability in enacting Section 280A. S. Rept. No. 94-938, 1976-3 C.B. (Vol. 3) 49, 185-186; H. Rept. No. 94-658, 1976-3 C.B. (Vol. 2) 695, 852-853; Joint Committee Explanation, 1976-3 C.B. (Vol. 2) 1, 151-153. We accordingly conclude that petitioner is not entitled to a deduction for any expenses connected with the office which he maintained in his home.
To give effect to other concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as in effect for the year in issue, and all references to rules herein are to the Rules of Practice and Procedure of the Tax Court, unless otherwise noted.↩